OSCAR T. JOHNSON et ux. v. ALFRED B. KILLIAN et ux.

27 So. (2nd) 345                                      June Term, 1946
July 16, 1946                                              Division B
Rehearing granted September 30, 1946

*Mitchell D. Price, Zaring & Florence,* and *W. F. Parker,* for appellants.

*Hendricks & Hendricks,* for appellees.

THOMAS, J.:

A suit was instituted by appellees against the appellants "to remove . . . the encroachment upon the property" of the former and to recover damages. Upon consideration of the testimony offered by the parties the chancellor decided that appellants should pay as damages "and for the value of the land" encroached upon the sum of $3000, in return for which appellees should convey to them "said land." In the event of failure to pay this money within sixty days it was ordered that the appellants "remove the encroachment." In approximate figures the "said land" is thirty-two feet in length, one foot in width at one end and two feet in width at the other, is situated along the west boundary of appellees' property, Lot 6, and is occupied by the part of appellants' garage on Lot 5 which protrudes onto the adjoining lot.

Evidently the predecessors of appellants and appellees, as well as others who improved the lots in that block, were quite careless in erecting buildings without determining the true lines, for it was stated by an engineer that there were encroachments on Lots 5, 7, and 8 as well as on Lot 6.

Appellants' garage is constructed of cement blocks, and it was said by one apparently in position to speak accurately, a general building constructor of wide experience, that it could not be moved bodily but would have to be torn down and rebuilt if its location were changed.

The building was erected in 1925, and the lot on which it is located was purchased by the appellants in 1936. Sometime later the appellees obtained the adjoining property. The encroachment was not discovered, so the appellee-husband testified, until 1944.

So these outstanding features are present: At the time they bought the property appellants were innocent of any encroachment by their predecessors; the building on the rear of the property of appellees extends onto the land of their neighbor to the east; the building which occupies the narrow strip along the boundary of appellees' property cannot be moved without being razed and rebuilt; the structure had already been in existence more than ten years when appellants and appellees bought their respective lots; and all were ignorant of the encroachment until about eight years later.

As we have seen, the chancellor granted a mandatory injunction requiring removal of the building, leaving to the appellants the only alternative of paying $3000 in cash and receiving a deed, presumably for a strip of land thirty-two feet in length and averaging a foot and a half in width. In the circumstances we have related we think the chancellor did not act within the bounds of his discretion when he granted the mandatory injunction.

It is true that there is much authority for the proposition that an injunction of this character may issue, in proper instances, to require the removal of an encroaching structure, and it is not difficult to discover cases describing situations where the remedy was held appropriate. For instance, the Supreme Judicial Court of Massachusetts in Kershishian v. Johnson, 210 Mass. 135, 96 N. E. 56, held that a property owner was entitled to the writ where his neighbor had carelessly constructed a building without determining the true boundary line during a dispute as to its location and in the

face of a warning that he must confine his building to his own land.

A district court of appeal in California in an opinion in Agmar et al. v. Solomon et al., 87 Cal. App. 127, 261 p. 1029, apparently approved by the Supreme Court of that state when that tribunal denied a petition for rehearing, adopted a pronouncement of the Supreme Court of Illinois in Pradelt et al. v. Lewis et al., 297 Ill. 374, 130 N. E. 785, 14 A.L.R. 828, that in cases of encroachment the owner will usually be relegated to his legal remedy, but the extraordinary remedy of injunction will be available if the encroachment is intentional, even if the damage is small.

In a decision of the Supreme Judicial Court of Massachusetts rendered many years after the one in Kershishian v. Johnson, supra, that court seems to have held that such an injunction would be defeated only where there was estoppel or laches on the part of the plaintiff. Geragosian v. Union Realty Co. et al., 289 Mass. 104, 193 N. E. 726.

From the examination of these and many other authorities we are convinced that not only must each controversy be decided upon the circumstances peculiar to it, but that it is difficult to trace a distinct line of demarcation between those instances where the remedy will be awarded and those where it will be denied. There are, however, certain fundamental principals which will obtain and upon which we have remarked on other occasions. The remedy of injunction is drastic, Seaboard All Florida Railway Company v. Underhill et al., 105 Fla. 409, 141 So. 306, and should be granted only cautiously and sparingly, Willis et al. v. Hathaway et al., 95 Fla. 608, 117 So. 89 also an injunction will not be granted where there is an adequate remedy at law.

Mandatory injunctions are looked upon with disfavor, and the courts seem even more reluctant to issue them than prohibitory ones. Allen v. Stowell et al., 145 Cal. 666, 79 p. 371. One court has announced that relief of this kind "for the most obvious reasons should be granted only in situations which so clearly call for it as to make its refusal work real and serious hardship and injustice." Lyons v. Walsh, 92 Conn. 18, 101 Atl. 488.

In the instant case the severity of the remedy is plain, for the appellants are faced either with razing the building which was in existence at the time they bought their lot, and at the time appellees bought the adjoining lot, and of losing it entirely except for the salvage of the materials, or paying a very large sum of money for a very small strip of land.

In the exercise of the caution which we long ago admonished should be used in the granting of injunctions and in view of the availability to appellees of a remedy at law that was adequate, we are impelled to disagree with the chancellor's order. Thie view is strengthened by the nature of the factual situation which we think is a typical one for the application of the principle of balancing relative conveniences of the parties. Moreover the underlying equitable considerations seem greatly to favor the appellants.

We pause now to enlarge somewhat on the circumstances we have already outlined, and in doing so we shall be guilty, to a certain degree, of repetition.

Certainly the garage in question was in plain view when the appellants bought Lot 5 and the appellees subsequently bought Lot 6. It had then been built about ten years. Neither appellants nor appellees took the trouble to have their property surveyed, and there must have been nothing about the structure which was especially offensive to the latter or even aroused their curiosity about its true location. Another eight years passed during which there was evidently no cause to suspect an encroachment or effort made to determine the point; then from a survey it was discovered that the encroachment had in fact been made twenty years before.

Apropos the principle of balancing relative conveniences of the parties we refer to the case of Pradelt et al. v. Lewis et al., supra, where it was held that although a mandatory injunction would ordinarily issue against the maintenance of an encroachment, thus compelling the removal of it, the remedy would not be available except when strong reasons were established. The court recognized the rule that where "the encroachment is slight and the cost of removing it will be great and the corresponding benefit to the adjoining owner small, or compensation and damages can be had, the court will ordi-

narily decline to compel a removal and will leave the complaining party to his remedy at law." Further commenting on the subject this court said that in order to be granted the relief the complaining party should show the damage to be irreparable, the encroachment intentional, and so on.

We conclude that the appellees in this case had an adequate remedy at law and that when the equities and conveniences were balanced they should have been relegated to it for any redress to which they could establish they were entitled.

It is our order that the decree of the lower court be reversed, with directions either to dismiss the bill without prejudice to any action which the appellees may bring at law or to transfer the cause to the law court (63.75 Florida Statutes, 1941, and F.S.A.) for determination.

Reversed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.

THOMAS, J.:

The court granted the appellees' petition for rehearing for the purpose of modifying the original opinion in view of the petitioners' challenge of the court's statement with reference to the requirements of the chancellor that the building of the appellants be *removed* from the lot of appellees. They have pointed out that a certain witness testified that the east wall could be removed, presumably without disturbing the rest of the structure, at a cost of $2500 and that court's observation with reference to the requirements of the decree were therefore erroneous.

It is true that this testimony appeared in the record, but it was given by the same witness who had previously stated on the witness stand, "We have never moved a concrete building successfully yet."

With this testimony before him the chancellor decreed "that upon default of defendants as above ordered [to pay the plaintiffs $3000], the defendants shall remove the encroachment which consists of an apartment building which extends over the West line of Lot 6 . . . " We construed this language to mean that removal of the entire building was re-

quired, but even if we adopt the interpretation of the appellees, we are not shaken in our view announced in the opinion originally prepared that the decision of the chancellor should be reversed for the reasons which it is not necessary to repeat here.

After rehearing we, therefore, adhere to the original opinion.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.