**JONES, et ux v. CITY OF NORTH MIAMI, et al.**
No. 61-C-9852.

Circuit Court, Dade County.
March 2, 1962.

Curtiss B. Hamilton, North Miami, for plaintiffs.

Bolles & Prunty, Miami, for defendant City of North Miami.

Coppen & Watkins, Miami for defendant Ball-Hamilton Corp.

PHILLIP GOLDMAN, Circuit Judge.

This matter is before the court for final disposition. It was initiated by the plaintiffs as residents and taxpayers of the City of North Miami.

In fine this proceeding involves the validity and enforcement of a zoning ordinance enacted by the defendant City of North Miami and the construction and enforcement of certain deed restrictions imposed upon the subdivision by the developer. This latter relief is sought against the defendant Ball-Hamilton Corp.

At the threshold, the defendants question the right of the plaintiffs to bring this action. An examination of the authorities leads the court to the conclusion that an adjacent or nearby home owner, directly affected by an alleged improper intrusion, has the right to challenge the validity of the intrusion. Cole v. Oka, Fla.App., 131. So.2d 757, Friedland v. Hollywood, Fla.App., 130 So.2d 306. Hence, the court turns to the merits.

First, the validity and effect of the zoning ordinance in question.

After reviewing the evidence and the authorities the court concludes that the defendant city substantially complied with the essential requirements of its charter in the enactment of the zoning ordinance (designated as Section 29-37.1 of the City's Code) which created the zoning classification known as 1B1S. The court further concludes that the plaintiffs have failed to carry the burden of establishing that the action of the city in enacting the ordinance in question was so clearly unreasonable, arbitrary and capricious as not to be "fairly debatable".

In order that the court's position will not be misunderstood, the court is resting its decision here squarely on the "fairly debatable" doctrine applicable to the judicial review of zoning ordinances in this state. See City of Miami Beach v. Hogan, Fla., 63 So.2d 493, Green et al v. City of Miami, et al, Fla.App. 107 So.2d 390, Town of Bay Harbor Islands v. Burk, Fla.App. 114 So.2d 225. Certainly the procedures followed here do not constitute a standard of excellence to be copied by other municipal corporations. However, the court cannot say that the city's fragmentary approach to the rezoning of the subject property is so unreasonable as to render it a nullity.

In many ways the case at bar closely parallels Cole v. Oka, Fla.App. 131 So.2d 757, which reached a contrary result. However, there was uncontroverted evidence here (which was absent there) that the ordinance in question was based upon a thorough and comprehensive study and review of zoning conditions in the affected area. In addition the quantity of property here was far in excess of the single isolated parcel seemingly at stake in the Cole case, supra.

These distinguishing features coupled with the long established rule that, in passing upon the validity of an ordinance, a judge should not substitute his views for those of the legislative branch of the municipal government, lead the court to the previously announced position that the city's action was at least "fairly debatable" and therefore valid.

Next the controversial deed restrictions.

These restrictions were first imposed upon the subdivision in November of 1951 (Deed Book 3511, at page 275, Public Records of Dade County, Florida; Pltfs. Ex. No. 15). It is apparent, and the court so finds, that they were made by a common grantor for the benefit of all the owners of lots in the subdivision. It is further apparent from the testimony adduced at both the preliminary and final hearings, and the court so finds, that the defendant Ball-Hamilton Corp., and the entity which now stands in the shoes of the original subdivider, Active Development Co., are for all pertinent purposes here, one and the same.

Throughout the years the developer and its assigns have strictly enforced the restrictions in question. The fact that "the shoe is now on the other foot" is not a proper justification for ignoring them.

The difficulty here, however, is with respect to enforcement.

In Washington Apartment Hotel Company et al v. Schneider et al, Fla., 75 So.2d 907, the Supreme Court reversed a decree granting a mandatory injunction to compel the owners of a certain property to remove a portion of a building which was being constructed in violation of restrictions in the deed.

Incident to reversing the chancellor the Court stated (75 So.2d at 909) —

"Mandatory injunctions are not favored by the courts. Johnson v. Killian, 157 Fla. 754, 27 So.2d 345. In that case, which resembles the present one, we held that the relative conveniences would be weighed and if it were found that the cost of removal of an encroaching building was great and the

corresponding benefit to the adjoining owner small, the mandatory injunction would be denied and the complaining party would be left to his remedy at law. Cf. Robinson v. Feltus, Fla., 68 So.2d 815."

For the most part this doctrine applies here. In the instant case the subject structure (insofar as potential encroachments, and its basic construction are concerned) was virtually completed when this litigation was commenced. This factor, coupled with the fact that the relative benefits to the plaintiffs (resulting from the removal of the encroachments and the reconstruction of the building) would be small, compels the court to the conclusion that equitable relief in the form of a mandatory injunction in these areas (encroachment and altering construction) must be denied.

The deed restrictions relating to the *use* of the subject premises are another matter, however.

Although the basic structure was virtually completed when this action was commenced, it was not actually completed and opened until a number of months later; long after the preliminary injunction hearing (October 21, 1961) at which time "red flags were flying" if, in fact, they were not "flying" prior thereto. Hence, the plaintiffs are not precluded from pursuing their remedies, if any, in this area. Cf. Miami Shores Village v. Brockway Post No. 124 of the American Legion, 156 Fla. 673, 24 So.2d 33.

With this in mind it is to be noted that the "Use restrictions" as set forth in the deed restrictions, contains the following verbiage — " . . . . and *no* business may be conducted thereon, except such business as is *directly concerned* with and *incidental* to each individual apartment house, apartment hotel, hotel club, or pool and cabana, as the case may be."

The key words here are unquestionably "directly concerned" and "incidental to". The use of these words unquestionably was for the purpose of narrowing the field. It should be further noted that the conjunction "and" is used with respect to the two limiting phases. In other words it is not enough that the allowable businesses be incidental to the enumerated areas, but in addition thereto the allowable businesses must be "directly concerned with" the enumerated areas. An analysis of the cases using similar phrasings (see 12A Words and Phrases, "Directly", p. 139 et seq., and 20A Words and Phrases, "Incident; Incidental", p. 100 et seq., cf. People v. Hanco Realty and Finance Corporation, 149 N.Y.S.2d 383, 386) in light of the over-all restrictions, convinces the court, and the court so finds, that the use restrictions were intended as a limitation or restriction against businesses in this area being open to the general public.

In its very able brief the defendant Ball-Hamilton Corp., in advocating a contrary construction, urges that the restricting language, set forth above, should be construed and interpreted in light of all the language employed in the subject document. With all due deference, the court has done this and concludes that its construction noted above actually finds additional support from an evaluation of the over-all document. For example, among the other restrictions set forth in the subject document is the requirement that the entrance to any such allowable businesses be exclusively limited to from *within* the building. There is the additional requirement that any such business shall *not* be identified by the use of outside signs, displays, etc. There is the further restriction against outside entrances. In addition "business buildings" (which presumably relate to unrestricted businesses) are limited to property carrying a "2B Zoning".

Surely, these requirements are consistent with the court's interpretation that it was not intended that such limited businesses as might be allowed under the deed restrictions would be open to the general public. In fact, when one considers the over-all circumstances and history of the project it is quite apparent that the deed restrictions did not contemplate the "general public" within the prescribed limits of the business activities authorized on the subject property.

The defendant Ball-Hamilton Corp., in support of a contrary construction, also urges that the court should follow what it terms the general rule of construction in favor of the free and unrestricted use of real property. Assuming, without deciding, that such a rule might otherwise be applicable, it loses sight of the fact that writings generally are construed against the scrivener and in this instance the author of the deed restrictions and the defendant corporation are, for all material purposes, one and the same.

In conclusion it should be noted, as indeed it is conceded by the defendant in its supplemental memorandum of February 1, 1962, that the "mere changing of zoning of the subject property by the city does not, by itself, cancel and void the Declaration of Restrictions as between the parties, and further, that any such convenants which may be more restrictive than the use allowed in any zoning ordinance will prevail." That being so, the fact that the amended zoning ordinance, discussed earlier in this question, may allow the use in question cannot, and does not, vitiate the use restriction discussed above.

Upon due consideration of the testimony, exhibits and very able briefs submitted by the parties, it is ordered and decreed as follows —

1. The court has jurisdiction of the parties hereto and the subject matter hereof.

2. The motions to dismiss filed by the defendants are denied.

3. The ordinance enacted by the City of North Miami and designated as Section 29-37.1 of the Code of the City of North Miami (which created a zoning classification known as 1B1S) is hereby declared to be valid in all respects.

4. The defendants Edmund Vischi, as mayor and councilman of the City of North Miami, Florida, and James Miller, John Boudrot, Tom Sasso and Harry Hurst, members of the city council of North Miami, Florida and each of them are hereby dismissed.

5. The defendant Ball-Hamilton be and it is hereby enjoined and restrained from using lots 1 through 18, block 9, San Souci Estates, according to the plat thereof recorded in plat book 50, page 86, of the public records of Dade County, Florida, for any purpose or purposes other than as are permitted under the declaration of restrictions imposed thereon and as construed herein; more specifically, all businesses authorized on the subject property are for the benefit of tenants thereof and their guests, and such business shall not be open to the general public.

6. Each party shall bear their respective costs.

7. The court retains jurisdiction of the cause and the parties hereto for the purpose of enforcing and, if necessary implementing the provisions set forth herein.

8. The provisions herein are stayed for a period of ten days so as to enable the corporate defendant to appeal and file supersedeas, if it is inclined to do so.