PETER S. PETERS & another *vs.* ANTHONY ARCHAMBAULT & another.

Plymouth. September 16, 1971. — February 8, 1972.

Present: TAURO, C. J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Trespass. Equity Jurisdiction,* Trespass.

In a suit in equity between the owners of adjoining lots of registered land, an encroachment by the defendants' house on more than nine percent of the plaintiffs' small lot, where the certificates of title for neither lot disclosed any encumbrance, warranted mandatory equitable relief ordering removal of the encroachment, notwithstanding that the encroachment had been created by the defendants' predecessor in title twenty years before the plaintiffs purchased their lot and had existed without complaint until it was discovered by a survey shortly after the plaintiffs' purchase, and that removal of the encroachment would involve substantial expense to the defendants. [92–94] TAURO, C.J., dissenting.

BILL IN EQUITY filed in the Superior Court on February 7, 1967.

The suit was heard by *Hale, J.*

*Brian E. Concannon* for the defendants.
*Brian T. Callahan* for the plaintiffs.

CUTTER, J. The plaintiffs by this bill seek to compel the defendants (the Archambaults) to remove a portion of the Archambault house which encroaches on the plaintiffs' land in Marshfield. The plaintiffs and the Archambaults own adjoining ocean-front lots. Both lots are registered (G. L. c. 185). Neither certificate of title shows the Archambault lot to have any rights in the plaintiffs' lot.

The Archambaults' predecessor in title obtained a

building permit in 1946 and built a house partly on their own lot and partly on the plaintiffs' lot, of which the total area is about 4,900 square feet. Each lot had a frontage of only fifty feet on the adjacent way. The encroachment contains 465 square feet, and the building extends fifteen feet, three inches, onto the plaintiffs' lot, to a depth of thirty-one feet, four inches. The trial judge found that it will be expensive to remove the encroaching portion of the Archambaults' building. He ruled (correctly, so far as appears from his subsidiary findings and from the small portion of the evidence which has been reported) that there had been established no estoppel of, or laches on the part of, the plaintiffs in seeking to have the encroachment removed. It appears from the evidence that the Archambaults bought their lot from one vendor and the plaintiffs on June 14, 1966, bought their lot from another vendor. The judge found no evidence of any permission by the owners of the plaintiffs' lot for the encroachment. The encroachment was discovered on July 14, 1966, when the plaintiffs had a survey of their land made.[1]

A final decree ordered the removal of the encroachment. The Archambaults appealed. The judge adopted as his report of material facts the findings already summarized.

1. In Massachusetts a landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land, even though the encroachment was unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place. *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 108–110. *Ferrone* v. *Rossi,* 311 Mass. 591, 594–597. *Blood* v. *Cohen,* 330 Mass. 385, 388–389. *Sheppard Envelope Co.* v. *Arcade Malleable*

---

[1] The brief findings and the limited evidence designated for report to this court leave it wholly uncertain (a) what, if any, inspection the plaintiffs made before purchasing their present house and lot, and (b) how much, if at all, the location of the Archambaults' building affected the price paid by the plaintiffs.

*Iron Co.* 335 Mass. 180, 187–189. *Ottavia* v. *Savarese,*
338 Mass. 330, 336–337. *Brink* v. *Summers,* 352 Mass.
786. In rare cases, referred to in our decisions as "exceptional" (see the *Ottavia* case, *supra,* at 336), courts of
equity have refused to grant a mandatory injunction and
have left the plaintiff to his remedy of damages, "where
the unlawful encroachment has been made innocently,
and the cost of removal by the defendant would be greatly
disproportionate to the injury to the plaintiff from its
continuation, or where the substantial rights of the owner
may be protected without recourse to an injunction, or
where an injunction would be oppressive and inequitable.
. . . *Lynch* v. *Union Inst. for Sav.* 159 Mass. 306. *Gray*
v. *Howell,* 292 Mass. 400. *Triulzi* v. *Costa,* 296 Mass. 24,
28. But these are the exceptions. What is just and
equitable in cases of this sort depends very much upon
the particular facts and circumstances disclosed." [2]

2. We here are considering the remedies to be applied
with respect to registered land. Such land is protected to
a greater extent than other land from unrecorded and
unregistered liens, prescriptive rights, encumbrances,
and other burdens. See G. L. c. 185, §§ 1 (e), 46 (as
amended through St. 1963, c. 242, § 2), 47, 53, 57, 58, 77,
112; Swaim, Crocker's Notes on Common Forms (7th
ed.), §§ 985–990, 991, 995; Davis, Mass. Conveyancers'
Handbook (2d ed.), §§ 125, 128–129; Partridge, Deeds,
Mortgages and Easements, 233. See also *St. George's
Church* v. *Primitive Methodist Church,* 315 Mass. 202,
204–206; *Goldstein* v. *Beal,* 317 Mass. 750, 758–759;
Park, Conveyancing, § 581 et seq. Adverse possession
(c. 185, § 53) does not run against such land. To recognize the encumbrance created by the Archambaults' en-

---

[2] Such cases have been based upon estoppel (see *Malinoski* v. *D. S.
McGrath Inc.* 283 Mass. 1, 10–11; *Ferrone* v. *Rossi,* 311 Mass. 591,
594–595); or on laches (see the *Geragosian* case, 289 Mass. 104, 109–
110, where the earlier decisions are reviewed; cf. *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288, 290–291); or on the
trivial nature of the encroachment or injury (see *Tramonte* v. *Colarusso,* 256 Mass. 299, 301; cf. *Goldstein* v. *Beal,* 317 Mass. 750, 758).
See *Lynch* v. *Union Inst. for Sav.* 159 Mass. 306, 308–310.

croachment would tend to "defeat the purpose of the land registration act." See *Goldstein* v. *Beal, supra,* at 759.

3. The present record discloses no circumstances which would justify denial of a mandatory injunction for removal of an encroachment taking away over nine per cent (465/4900) of the plaintiffs' lot. The exceptions (see fn. 1, *supra,* and related text) to the general Massachusetts rule, hitherto recognized as sufficient to justify denial of mandatory relief, have related to much less significant invasions of a plaintiff's land, or have involved circumstances not here present. The invasion of the plaintiff's lot is substantial and not de minimis.[3] Photographs and maps in evidence, portraying the encroachment, show that the intrusion of the Archambaults' building on the plaintiffs' small lot greatly increases the congestion of that lot. The plaintiffs were entitled to receive whatever was shown by the land registration certificate as belonging to their grantor, unencumbered by any unregistered prescriptive easement or encroachment.

4. The Massachusetts rule in cases like this is well established. There is no occasion for resort to cases from other jurisdictions.

*Decree affirmed with costs of appeal.*

TAURO, C.J. (dissenting) The plaintiffs and defendants are owners of adjoining lots, with dwellings, both registered under G. L. c. 185. The defendants acquired title to their lot on June 18, 1954, and the plaintiffs acquired their title on June 14, 1966. The plaintiffs seek removal of a portion of the defendants' dwelling which encroaches on their land. This encroachment existed in full view

---

[3] Our position avoids constitutional doubts (see *Opinion of the Justices,* 341 Mass. 760, 785) which might arise were we to allow the Archambaults, at their option and as a result of the trespass of their predecessor in title, to expropriate part of the plaintiffs' land by essentially an informal exercise of private eminent domain. See Constitution of the Commonwealth, Declaration of Rights, art. 10 (as affected by art. 39 of the Amendments); *Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242, 248. Cf. *Machado* v. *Board of Pub. Works of Arlington,* 321 Mass. 101, 103–104.

from June, 1946, when the defendants' predecessor in title erected the dwelling, until July 14, 1966, when the plaintiffs had their property surveyed for the purpose of erecting a retaining wall. During this period, neither the plaintiffs' predecessor in title nor the plaintiffs raised any objection to the location of the defendants' dwelling. It is reasonable to infer that prior to taking title the plaintiffs viewed the property. Thus they had actual notice of the location of the defendants' dwelling and its relative position to their own dwelling.

The plaintiffs do not seek money damages but rather a decree for the removal of the encroachment on their land which, in effect, would result in the destruction of the defendants' dwelling.[1] The Superior Court made, and the majority today affirm, such a decree. I cannot agree with the opinion of the majority that, in the proper exercise of the court's discretion, "[t]he present record discloses no circumstances which would justify denial of a mandatory injunction" compelling the removal of the encroaching structure.[2] To the contrary, I believe that the record before us sets forth unusual circumstances which would justify this court in denying a mandatory injunction and leaving the plaintiffs to seek their remedy at law for damages. Moreover, the granting of injunctive relief in the circumstances of this case would be "oppressive and inequitable."

---

[1] Photographic exhibits of the locus, including the defendants' dwelling, indicate that the enforcement of the present order by this court will have the practical effect of requiring the defendants to remove one-third to one-half of their dwelling which encroaches upon the plaintiffs' lot.

[2] The rule governing treatment of suits in equity for removal of encroaching structures dates at least from *Kershishian* v. *Johnson,* 210 Mass. 135, 137, in Massachusetts. For the current formulation, see *Geragosian* v. *Union Realty Co.,* 289 Mass. 104, 110, and *Ferrone* v. *Rossi,* 311 Mass. 591, 593. Examples of its application during the last thirty years include *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288, 290; *Ferrone* v. *Rossi,* 311 Mass. 591, 593; *Goldstein* v. *Beal,* 317 Mass. 750, 757–758; *Blood* v. *Cohen,* 330 Mass. 385, 387; *Lizzo* v. *Drukas,* 333 Mass. 242, 243–244; *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.,* 335 Mass. 180, 188–189; *Ottavia* v. *Savarese,* 338 Mass. 330, 336–337; and *Brink* v. *Summers,* 352 Mass. 786. Other jurisdictions also follow this rule. See generally annotation, 28 A. L. R. 2d 679–751.

To conclude, as does the majority opinion, that this court must grant a mandatory injunction because the facts in the instant case do not precisely fit the factual pattern adjudged to be "exceptional" in prior Massachusetts cases is illogical and untenable. Courts, especially courts of equity, should not be restricted to so fossilized a concept of what the law is or should be. The cause of justice deserves a better fate. The overwhelming weight of authority in other jurisdictions recognizes and applies the doctrine I urge be adopted here. (See footnotes 7 and 8, *infra.*)

1. This court has recognized the existence of exceptional cases even as we laid down the general rule governing the treatment of suits in equity for the removal of encroaching structures. See *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109–110; *Ferrone* v. *Rossi*, 311 Mass. 591, 593. See also *Goldstein* v. *Beal*, 317 Mass. 750, 758; *Ottavia* v. *Savarese*, 338 Mass. 330, 336. In *Ferrone* v. *Rossi, supra*, we said, "The [general] rule does not apply in those exceptional cases where the substantial rights of the landowner may be properly safeguarded without recourse to an injunction which in such cases would operate oppressively and inequitably." P. 593.

While it is true that this court in the past has denoted various classes of exceptions,[3] I cannot agree with the view which the plaintiffs urge, and which the majority find persuasive, that these cases bar this court from considering the particular facts of each case independently

---

[3] It is thus well established that injunctive relief may be refused where the plaintiff is guilty of estoppel or laches (*Malinoski* v. *D. S. McGrath, Inc.*, 283 Mass. 1, 11; *Ferrone* v. *Rossi*, 311 Mass. 591, 594–595; see *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109, and *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288, 290–291), or where the encroachment is small or slight and thus within the de minimis principle (*Harrington* v. *McCarthy,* 169 Mass. 492, 494–495; *Tramonte* v. *Colarusso*, 256 Mass. 299, 301; *Triulzi* v. *Costa*, 296 Mass. 24, 28; see *Lynch* v. *Union Inst. for Sav.* 159 Mass. 306, 308–309, and *Goldstein* v. *Beal*, 317 Mass. 750, 758), or where the plaintiff refuses to consent to acts necessary to removal (*Tramonte* v. *Colarusso, supra*, at 301; see *Geragosian* v. *Union Realty Co., supra*, at 109), or where the plaintiff holds a lease which will expire shortly (*Brande* v. *Grace*, 154 Mass. 210, 213; *Lynch* v. *Union Inst. for Sav., supra*, at 309–310).

of recognized categories of exceptions. I believe that equity and justice require different standards. Long ago in *Starkie* v. *Richmond*, 155 Mass. 188, 195–196, we stated the principle that should guide us in reviewing cases of this sort where a plaintiff seeks to invoke our equitable powers: *"Each case depends on its own circumstances. It is for the court, in the exercise of a sound discretion, to determine in such instances whether a mandatory injunction shall issue. It will not be issued when it appears that it will operate inequitably and oppressively,* nor when it appears that there has been unreasonable delay by the party seeking it in the enforcements of his rights, nor when the injury complained of is not serious or substantial, and may be readily compensated in damages, while to restore things as they were before the acts complained of would subject the other party to great inconvenience and loss" (emphasis supplied). Cited with approval in *Gray* v. *Howell*, 292 Mass. 400, 403. See *Levi* v. *Worcester Consol. St. Ry.* 193 Mass. 116, 118. We have not changed our view since the time of *Starkie* v. *Richmond.* As recently as our last full opinion arising from a bill seeking a decree compelling the removal of an encroachment, this court said, "What is just and equitable . . . depends very much upon the particular facts and circumstances disclosed." *Ottavia* v. *Savarese*, 338 Mass. 330, 336.

While both *Starkie* v. *Richmond* and *Gray* v. *Howell* involved encroachments upon easements, I believe that these cases state a principle of general application. A number of cases involving trespassing structures can indeed only be explained as applications of this principle. *Methodist Episcopal Soc. in Charlton City* v. *Akers*, 167 Mass. 560 (injunction refused where encroaching structure occupied a small portion of the plaintiff's land and did not interfere with the plaintiff's enjoyment of its remaining land). *Loughlin* v. *Wright Mach. Co.* 273 Mass. 310 (injunction refused where encroachment was upon a six-inch strip of the plaintiff's land and the removal would involve large expense for the defendant without any

benefit to the plaintiff). *Gray* v. *Howell,* 292 Mass. 400 (injunction refused where encroachment upon the plaintiff's right of way had continued for many years, where removal of the encroaching house and garage would be at great expense to the defendant with small benefit to the plaintiff, and where the defendant offered to convey to the plaintiff a more suitable right of way). Among the various cases cited as coming within a particular recognized exception, some upon close examination appear likewise to represent a balancing of equities after due consideration of all pertinent facts. See *Lynch* v. *Union Inst. for Sav.* 159 Mass. 306, 308, 310. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 10–11.

2. While I agree that the pattern of facts in the instant case does not conform to the pattern in any of the decided Massachusetts cases, this factor is not decisive. I have examined the cases where this court has made an exception and I have found no stronger case on the facts than the instant case for the denial of injunctive relief on the basis of established principles of equity and justice. If we are to give any continuing validity to the long established rule that, in exceptional cases, where equity and justice do not require the removal of an encroachment, injunctive relief will not be granted, it would be difficult to envision a set of facts and circumstances which would present a more meritorious case in which to refuse a mandatory injunction.

Since there is essentially no dispute about the basic facts, this court may draw its own rational inferences from the trial judge's express findings of fact and arrive at its own conclusions. *Distasio* v. *Surrette Storage Battery Co.* 316 Mass. 133, 135. We need not defer to any inferences which he may have drawn. *Corkum* v. *Salvation Army of Mass. Inc.* 340 Mass. 165, 166–167. *East Coast Aviation Corp.* v. *Massachusetts Port Authy.* 346 Mass. 699, 705. I proceed on this basis.

As stated above, the defendants occupied their dwelling for over twelve years peacefully and without complaint prior to the present lawsuit. They bought their property

in June, 1954, apparently without knowledge that, in 1946, their predecessor in title had mistakenly built partially upon an adjoining lot.[4] The defendants' house was in plain view when the plaintiffs acquired title to the adjoining lot in June, 1966. It seems likely that, before the plaintiffs took title, they viewed the property and were aware of the location of the defendants' house and its proximity (by approximately six feet) to the house they might purchase. It is reasonable to infer, either that they inquired and were told that the space between the dwellings marked the property line, or that they made this assumption. The plaintiffs have disclosed that they discovered the encroachment one month after taking title as the result of a survey undertaken by them for the purpose of constructing a retaining wall.[5] Apparently there was nothing about the defendants' dwelling which was offensive to the plaintiffs or even aroused their suspicions at the time of purchase. It appears therefore that the plaintiffs were satisfied with their purchase and the proximity of the defendants' dwelling to their own until the survey and that, but for the fortuity of the survey, the encroachment might have continued undiscovered indefinitely as it had during the entire period 1946 to 1966.

The discovery of the encroachment in these circumstances is best characterized as an unexpected windfall [6] rather than an intentional injury. The defendants are

---

[1] While the trial judge found no evidence that the plaintiffs' predecessor in title gave his permission in 1946 to the building of a house partially on his lot, neither did the judge find any evidence that the then owner protested during construction or in later years. It is clear therefore that the dwelling now owned by the defendants remained in plain view for a period of two decades apparently without objection from anyone.

[5] The disclosure is contained in a written communication to this court in response to a question during oral arguments.

[6] The close proximity of the defendants' dwelling to the plaintiffs' dwelling was necessarily a factor in the purchase price. As a corollary, the plaintiffs' property would have been worth more, and the plaintiffs would have had to pay more, if the distance between the two dwellings had been greater. It would seem therefore that, because of the mistake of both parties and of their predecessors in title, the plaintiffs stand to obtain a windfall at the defendants' expense.

innocent of any wrongdoing and are at most guilty of unknowingly continuing a long-standing encroachment. Nor can it be said that the defendants have deprived the plaintiffs of something which they believed they were entitled to at the time of their purchase. On the contrary, the plaintiffs could only have believed that they were acquiring exactly what they contemplated when they inspected the property. Subsequently, by virtue of the survey which they had made, the plaintiffs discovered they had purchased more than they had bargained for. At the same time, the defendants learned that what they had purchased in 1954 was less than they had bargained for. These circumstances should not pass unnoticed.

Moreover, removal would be a severe burden upon the defendants. As the trial judge indicated, it would "cost a lot of money, and [involve] a lot of inconvenience, and . . . reduce . . . [the defendants'] property value to a great extent." The judge does not appear to have considered whether removal might require the razing of a substantial portion of the defendants' house, but from the exhibits, we should not be unaware of this possibility. The judge made no finding of irreparable injury to the plaintiffs. Under the other facts which he did find, however, I conclude to the contrary that the injury to the plaintiffs, if any, is not of great significance compared with the defendants' loss and that money damages should be a sufficient remedy.

In the totality of circumstances, I conclude that equity does not, in the exercise of our sound discretion, require us to grant injunctive relief.[7] Removal imposes upon the defendants substantial cost and inconvenience which are entirely disproportionate to the injury to the plaintiffs. Where, as here, it appears that the plaintiffs were content

---

[7] Discretionary power of the court exists only as to whether injunctive relief shall be granted. Once a decree has been made, compliance is not subject to the court's discretion. It becomes mandatory. See fn. 13 of my concurring opinion in *United Factory Outlet, Inc.* v. *Jay's Stores, Inc., ante,* 49.

with the status quo until fortuitous discovery of the encroachment, it would be oppressive and inequitable for this court to grant a mandatory injunction against the defendants who have acted in good faith, albeit their predecessor in title made a mistake which remained undiscovered for some twenty years. Hardship alone is of course not a ground for denial of injunctive relief (*Kershishian* v. *Johnson*, 210 Mass. 135, 139), but this court should take relative hardship into account, if, as in the instant case, the owner of the encroaching structure is not guilty of an intentional trespass. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 11. *Ottavia* v. *Savarese*, 338 Mass. 330, 336. See *Gray* v. *Howell*, 292 Mass. 400, 404. The view I express is not only in accordance with our own case law but also in accordance with decisions in other jurisdictions. See annotation, 28 A. L. R. 2d 679, at 699–702, and cases cited therein.[8] See generally 1 Am. Jur. 2d, Adjoining Landowners, § 133; Restatement: Torts, § 941.[9] Here, it appears not only that the defendants have always acted in good faith but also that the initial trespass was committed many years before they acquired title to their lot. The case of *Johnson* v. *Killian*,

---

[8] See also *Dolske* v. *Gormley*, 58 Cal. 2d 513, 520–521. *Christensen* v. *Tucker*, 114 Cal. App. 2d 554, 562–563; *Malchow* v. *Tiarks*, 122 Ill. App. 2d 304, 311; *Sproles* v. *McDonald*, 70 N. M. 168, 174–175; *Graven* v. *Backus*, 163 N. W. 2d 320, 325–326 (N. D.); *Arnold* v. *Melani*, 75 Wash. 2d 143, 152–153, reh. den. 75 Wash. 2d 153.

[9] The Supreme Court of Colorado has said: "Where the encroachment is deliberate and constitutes a willful and intentional taking of another's land, equity may well require its restoration regardless of the expense of removal as compared with damage suffered therefrom; but where the encroachment was in good faith . . . the court should weigh the circumstances so that it shall not act oppressively. 5 Pomeroy's Equity Jurisprudence, page 852, section 508. While the mere balance of convenience is not the proper test, yet relative hardship may properly be considered and the court should not become a party to extortion." *Golden Press, Inc.* v. *Rylands*, 124 Colo. 122, 126. California follows the same principle. See *Christensen* v. *Tucker*, 114 Cal. App. 2d 554, 563. In my view, this position is required by the well known principle that a court of equity seeks to do justice and not injustice. 27 Am. Jur. 2d, Equity, § 119. 30 C. J. S., Equity, § 89, pp. 978–981.

157 Fla. 754, is in point.[10]   I believe that this circum-
stance in particular distinguishes the present case from
*Geragosian* v. *Union Realty Co.* 289 Mass. 104, and suc-
cessor cases, and would justify us in denying the plain-
tiffs' bill for a mandatory injunction.

3.   The majority lay much stress on the fact that we are
here dealing with registered land.   The majority opinion
states: "To recognize the encumbrance created by the
Archambaults' encroachment would tend to 'defeat the
purpose of the land registration act.' "   I cannot agree.
It is erroneous to suppose that, if we denied injunctive
relief, the effect upon the plaintiffs would be to make their
lot subservient to rights in the defendants' lot.   By virtue
of the land registration act (G. L. c. 185), no court has
such a power to alter registered titles.   See *Goldstein* v.
*Beal,* 317 Mass. 750.[11]   I do not see, however, that an
injunction in any way affects the plaintiffs' certificate of
title or tends to defeat any recognized purpose of the land

----

[10] In *Johnson* v. *Killian,* under facts nearly identical to those in the
instant case, the Supreme Court of Florida refused a mandatory in-
junction.   The plaintiffs and defendants owned adjoining lots in a
subdivision.   The defendants' garage protruded upon the plaintiffs' lot
to a significant extent (for a distance of thirty-two feet, ranging in
width from one foot at one end to two feet at the other end).   The court
considered the following factors in balancing the equities (at p. 758) :
The defendants' predecessor in title had built the garage twenty years
before the lawsuit.   When both the defendants and the plaintiffs took
title to their respective lots, the encroachment was in "plain view,"
and neither party "took the trouble to have their property surveyed."
From these facts, the court inferred that "there must have been noth-
ing about the structure which was especially offensive to the . . .
[plaintiffs] or [which] even aroused their curiosity about its true loca-
tion."   The court denied injunctive relief on the basis (at p. 757) that
"[t]he remedy of injunction is drastic . . ., and should be granted only
cautiously and sparingly, . . . also an injunction will not be granted
where there is an adequate remedy at law" (citation omitted).   It con-
cluded (at p. 759) that ". . . [the plaintiffs] had an adequate remedy at
law and that when the equities and conveniences were balanced, they
should have been relegated to . . . [their legal remedy]."

[11] In *Goldstein* v. *Beat,* this court held (at pp. 758–759) that, because
the plaintiff's lot was registered, the trial judge could not oblige the
plaintiff to execute a conveyance to the defendants.   Inasmuch as we
found, upon review of the facts, that no unusual circumstances existed
which took the case out of the general rule (of *Geragosian* v. *Union
Realty Co.* 289 Mass. 104, 109), a decree ordering removal of the en-
croachment was entered.   Had we found unusual circumstances, there
is no indication that we would not have denied the injunction and left
the plaintiff to his remedy at law.

registration act. It does not follow that a decision deny-
ing injunctive relief and leaving the plaintiffs to their
remedy at law would be the same as enlarging the defen-
dants' title at the plaintiffs' expense by means of pre-
scription or adverse possession. See G. L. c. 185, § 53.[12]
It would seem that after an award of damages the plain-
tiffs and the defendants would be free voluntarily to
reform the titles and establish corrected boundaries.

Furthermore, in the instant case the plaintiffs acquired
title to their property with full knowledge of the location
of the defendants' dwelling in relation to their own dwell-
ing. In *Killam* v. *March,* 316 Mass. 646, the defendants
claimed a right of way by virtue of an easement granted
to them by the plaintiffs' predecessors in title but not
recorded with the registered title in the Land Court. This
court denied the plaintiffs' bill for injunctive relief on the
basis that they had actual notice of the unrecorded ease-
ment. We observed (at p. 651) that "the provisions of
G. L. (Ter. Ed.) c. 185 relating to transfers . . . subse-
quent to registration . . . compel the conclusion that the
Legislature did not intend to give certificate holders . . .
an indefeasible title as *against interests of which they
had actual notice*" (emphasis supplied). I conclude on
the basis of *Killam* v. *March* that where, as here, the
plaintiffs purchased their lot with full knowledge of the
location of the encroaching structure, it would be in no
sense offensive to the land registration act if this court
should refuse to compel the defendants, who are inno-
cent of any wrongdoing, to remove the encroachment. If
anything, the present facts disclose a stronger case for
denial of injunctive relief than *Killam* v. *March* because
the defendants here, in contrast to those in the *Killam*
case, do not claim an interest in the plaintiffs' land.

4. I do not intend that the long established rule in
Massachusetts in reference to unlawful encroachments

---

[12] Nor can it be seriously argued that such a result would be, in
effect, an exercise of the State's eminent domain power for the benefit
of a private interest. Restatement: Torts, § 941, comment d. See *Gray*
v. *Howell,* 292 Mass. 400.

should be extended or varied.   On the contrary, I feel that it is incumbent upon this court in the circumstances of the instant case to weigh the relative equities of the parties and determine whether this is an exceptional case under our Massachusetts rule.

Upon reviewing the present record, I conclude that this is an exceptional case which does not require injunctive relief.   The defendants neither initiated the encroachment[13] nor had notice of it when they acquired their property in 1954.   The plaintiffs purchased the adjoining lot in 1966 with full knowledge of the proximity of the defendants' dwelling to their own, and in concluding the transaction, they necessarily believed that they were purchasing a small house on a congested lot.   It seems unlikely that the proximity of the dwellings, apparently satisfactory at the time of purchase, has since become such an unbearable hardship to the plaintiffs that only the removal of the defendants' dwelling will suffice.

If we were to refuse injunctive relief, common sense suggests that, in all probability, this dispute would be settled eventually without the need for the destruction of the defendants' dwelling.   This could be accomplished through an agreement by the plaintiffs voluntarily to relocate their boundary line in return for payment by the defendants of an amount negotiated between them.   The parties would then have their certificates of title reformed to reflect the agreement.   In the alternative, the plaintiffs could bring an action at law and the court would make an impartial assessment of damages.   The placing of the potent weapon of injunctive relief in the hands of the plaintiffs is hardly conducive to a fair and just settlement.   In circumstances such as those in the instant case,

---

[13] The record does not disclose a situation, such as was present in *Kershishian* v. *Johnson,* 210 Mass. 135, 137–138, where the defendant, although not personally responsible, is legally chargeable with an encroachment because his servant committed the trespass.  Inasmuch as the instant defendants are in the position of good faith purchasers, it would not be proper to impute to them any negligence or other wrongful conduct of which their predecessor in title may have been guilty.  See *Goldstein* v. *Beal,* 317 Mass. 750, 758–759.

the court in *Christensen* v. *Tucker*, 114 Cal. App. 2d 554, 563, said: "[T]he injunction should be denied, otherwise, the court would lend itself to what practically amounts to extortion." See *Golden Press, Inc.* v. *Rylands*, 124 Colo. 122, 126. I would dismiss the bill and relegate the plaintiffs to their remedy at law.