599 So.2d 1309 (1992)
Frank C. DIEFENDERFER, III, Appellant,
v.
FOREST PARK SPRINGS, et al., Appellees.
No. 91-993.
District Court of Appeal of Florida, Fifth District.
April 10, 1992.
Rehearing Denied July 2, 1992.
*1310 John T. Pattillo, of Hunter, Pattillo, Marchman, Sanders & Bethea, P.A., Winter Park, for appellant.
Edmund T. Baxa, Jr., and Michael J. Beaudine, of Foley & Lardner, Orlando, for appellees Forest Park Springs, B.V., Inc., Cofin Commerce & Financial Corp., Parkhoven, B.V., James E. and Susan M. Lintz, and Howard M. and Susan A. Pelteson.
No appearance for appellees T.R. Properties, Inc. of Winter Park, Heidenescher Homes, Inc., and Ashley Builders, Inc.
W. SHARP, Judge.
Diefenderfer appeals from a final judgment rendered after a non-jury trial which denied his application for a mandatory injunction. The injunction would have required appellees (Forest Park Springs, B.V., Inc., et al.) to remove those portions of a concrete block and masonry subdivision wall which encroached on Diefenderfer's fifty-foot right-of-way easement for *1311 ingress and egress. The court denied the mandatory injunction because the wall did not impair Diefenderfer's use of the easement at the present time. Diefenderfer still had remaining for his use a thirty to thirty-five foot area outside of the wall's encroachments. He had only been using (at most) a twelve foot wide strip for a dirt road to access his lot and it was not affected by the wall. Nor did he have plans for an expanded use in the future. We reverse.
The record established that in 1977, Diefenderfer purchased Lot 17 in the Peace Valley Miami Springs subdivision in Seminole County, Florida. This subdivision is platted as a single tier of lots running east and west. They are fifty feet deep in their north to south dimensions. To the north of the lots the plat shows a fifty-foot road, which is labeled "private road for use of lot owners of this plat only." The prior owner of the lands to the north of the Miami Springs subdivision granted to the Miami Springs' lot owners a fifty-foot easement for ingress and egress consistent with the plat.
Diefenderfer built a rental home on Lot 17 in 1980. He, his tenants, and other lot owners in the subdivision were using a dirt road approximately twelve feet wide to access their lots. It ran within the fifty-foot easement area but was located primarily along the southernmost part of the fifty-foot easement.
In 1984, a development group, predecessors in title to the appellees, purchased the property burdened with the easement. They were well aware of the private road easement. They wrote each Miami Springs lot owner a letter acknowledging that the prior owner (Mr. Williams) had granted them "a 50-foot easement for ingress and egress." The letter noted that Seminole County had required them to build a fence or wall along their south and east property lines. Since the dirt road then in use was only eight feet wide, they proposed that the lot owners "consider allowing us to use 30 feet of the 50-foot easement, leaving 20 feet which is more than ample for ingress and egress." They offered each owner $2,500 in cash, but all had to agree. Diefenderfer rejected this proposal.
In 1985, in the course of arranging financing for the subdivision development, the attorneys for the lenders discovered a "boundary" problem. The plat described the location of the lots and dirt road as one hundred twenty feet north of where they actually were. This dilemma was eventually (apparently) cured to everyone's satisfaction by swapping quit claim deeds, so that each person ended up with a deed to the property which they were in fact occupying. Those transactions have no real bearing on this controversy, except to further shed light on the parties' concept and understanding about the easement.
As part of the settlement of the boundary controversy, Forest Park (through its agents and attorneys) again proposed that Diefenderfer agree to a reduction of the private road easement from fifty feet to approximately twenty or twenty-five feet in width. Diefenderfer responded through his attorney, accepting the proposed settlement of the boundary dispute, but expressly refusing to reduce the size of the easement. Accordingly, his quit claim deed to Forest Park, et al., which resolved the boundary dispute, expressly reserved "a perpetual nonexclusive easement for ingress and egress over and across the southerly fifty feet of that certain parcel of real property described on said Exhibit `A'." (emphasis supplied)
Forest Park then placed on record a plat for the land north of the Miami Springs lots. It is entitled Sweetwater Springs P.V.D. It shows the Miami Springs lots immediately to the south. It also expressly shows the "50-foot private road for ingress and egress" between the two subdivisions. The plat cross-references the recorded boundary settlement, which in turn references the Miami Springs plat and establishes the true location of the "private road."
Sometime in 1987, Forest Park built a wall within the fifty-foot easement area. It does not obstruct the dirt road, but it deviates from the north boundary of the fifty-foot easement in various places, leaving a balance of thirty to thirty-five feet *1312 accessible for the private road easement. The landscape architect (Knight) testified at trial that the wall was intended to be placed on a five-foot, "landscape" easement reserved by the developer on the south end of the Sweetwater lots. He designed the wall to "jog" around trees larger than sixteen inches.
The agent for the developer (Keen) testified that he knew about the fifty-foot, private-road easement when he and his assistant actually located the wall on the ground. It is an ordinary block wall, which cost between $20,000 and $25,000 and took them two months to construct. He said he put the wall on the north line of the fifty-foot easement, except when necessary to "jog" to avoid taking out large or specimen trees.
Keen agreed some "jogs" went twenty feet south of the easement line. There were no Giant Sequoias which could explain such a large deviation. The largest trees did not exceed three feet in diameter. Keen's main justification was that he did not want to "jog" north into the lots being developed for Sweetwater, and the dominant tenement owners (Diefenderfer) did not really need or use the full fifty-foot access easement. Since the developer owned the fee, he felt free to appropriate the excess.
Diefenderfer testified that when he first saw the footers being poured for the wall, he contacted the developer at least twice to protest the encroachment on the easement. Keen disputed having any contact with Diefenderfer during the construction phase. But shortly after the wall was built, Diefenderfer had a survey made, which verified his suspicions that the wall substantially jogged south from the north line of the fifty-foot easement. He then promptly commenced the present litigation.
The initial problem in such cases is for the court to construe or interpret this type of easement. The grant of an easement over a described area does not necessarily represent the easement's boundaries.[1] In sum, the court must determine whether the fifty-foot width is a description of the easement's dimensions, or whether it is merely descriptive of the property over which the dominant tenement owner (Diefenderfer) has right of ingress and egress from his lot, sufficient to accommodate his actual and reasonable needs. Ordinarily, easements "over" a described area are given the latter interpretation.[2]
However, if the easement is created by an express grant, as in this case, any ambiguity must be resolved against the grantor.[3] And the proper construction of the grant must be arrived at by looking at what the original parties intended, as well as their successors in title as manifested by both the circumstances, and the actions and statements of the people involved.[4]
In this case, it appears to us that the trial court properly construed the grant as covering the full fifty-foot area.[5] The record shows the original parties (lot owners of Miami Springs) and the predecessor in title to Forest Park, contemplated a full fifty-foot roadway, as depicted on the Miami Springs plat. Even Forest Park viewed the easement the same way. Its own plat shows the fifty-foot private road as the southern boundary of its own property. *1313 Depicting the whole of the burdened area as a "road" in the plats referencing the disputed easement strongly indicates the parties intended that the whole fifty-foot strip was burdened with the easement. See McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953). Cf. Hoff v. Scott, 453 So.2d 224 (Fla. 5th DCA 1984).
In addition, Forest Park's efforts to purchase thirty feet of the "fifty-foot easement" from Diefenderfer and the other lot owners also clearly indicate appellees understood from the beginning that the easement encompassed the full fifty feet. Why else would they have offered to pay $2,500 to each dominant tenement owner to extinguish thirty feet of the easement if they did not recognize their rights to the whole fifty-foot strip? Had Diefenderfer only had the right to use his twelve-foot dirt roadway, such an offer would have been gratuitous.
Forest Park argues that the judgment below should be sustained because Diefenderfer and the other lot owners only used the dirt road (some twelve feet in width), and the court should construe the easement grant consistent with Diefenderfer's actual use and any reasonably anticipated future use. However, in the case of an express grant of an easement fifty feet wide, the servient tenant owner (Forest Park) cannot put up permanent obstructions of any nature in any part of the easement area. Considerations about what Diefenderfer's "needs" are, or what he is using, are not relevant nor appropriate. Hoff v. Scott, 453 So.2d 224 (Fla. 5th DCA 1984); Langhorst v. Riethmiller, 52 Ohio App.2d 137, 368 N.E.2d 328 (1977); Aladdin Petroleum Corp. v. Gold Crown Properties, Inc., 561 P.2d 818 (Kan. 1977); 2 G. Thompson, Commentaries on the Modern Law of Real Property § 426 (1980); 28 C.J.S. Easements § 75 (1941). Reducing the express grant from fifty feet to twenty feet would require the court to rewrite the terms of the express grants and plats.[6] The court cannot so act.
Forest Park also argues the trial court's refusal to enter a mandatory injunction in this case, despite the construction of the grant as encompassing the full fifty feet, should be upheld because the trial court properly "balanced" the relative hardships and equities. Injunctions may be refused in the court's discretion even if a party's rights are clear and the legal remedy is inadequate because of various factors including delay in asserting one's legal rights, a large discrepancy between the cost to restore the easement to its former unobstructed condition and the benefit to the dominant tenement owner, and other equitable considerations.[7]See Johnson v. Killian, 157 Fla. 754, 27 So.2d 345 (1946).
The record in this case is not appropriate for denial of a mandatory injunction because of the "balancing of the equities" doctrine. In a proper case a mandatory injunction can be refused but some damages or costs must be assessed to compensate the dominant tenement owners for any loss. See Johnson. In this case no delay or laches were proved against Diefenderfer. Compare, e.g., Davis v. Joyner, 409 So.2d 1193 (Fla. 4th DCA 1992). Nor is the encroachment of the subdivision wall de minimus. Compare Davis.
However, the most distinguishing factor in this case is that Forest Park (through its agents) intentionally placed the wall in its present location with full knowledge of the exact location of the north fifty-foot easement line. When necessary to save trees, the wall was jogged always south into the easement area and never north into the subdivision's landscape easement area. In places it jogged at least twenty feet  far more than necessary to preserve the largest of the trees.
We, as well as authorities writing in this area of law, acknowledge that the application of the "balancing the equities" or "comparative hardships" doctrine under some circumstances amounts to allowing the servient tenement owner to acquire the *1314 dominant tenement owner's easement interest by a form of private eminent domain.[8] This raises serious constitutional problems.[9]See Griffin v. Red Run Lodge, Inc., 610 F.2d 1198 (4th Cir.1979). That is no doubt why courts usually refuse to apply this balancing doctrine where the encroachment is done intentionally or willfully. As the court said in Pradelt v. Lewis, 297 Ill. 374, 130 N.E. 785 (1921):
[T]he duty of the court is to protect rights, and innocent complainants cannot be required to suffer the loss of their rights because of the expense to the wrongdoer.
No Florida court that we have found has applied the "balancing" doctrine described above to a situation where the servient tenement owner intentionally and consciously encroached onto the easement and the dominant tenement owner was not guilty of some form of estoppel or laches. In Johnson v. Killian, the encroachment was built eleven years before appellants purchased the land and twenty years before it was discovered. The court described appellant as "innocent." It specifically noted the issuance of a mandatory injunction requires the finding of "strong reasons." One was that the encroachment was intentional.[10]
In Monell v. Golfview Road Assn., 359 So.2d 2 (Fla. 4th DCA 1978), our sister court ruled that the "balancing of the equities" doctrine should not be applied where the servient tenement owner intentionally interfered or obstructed the dominant tenement owner's easement rights. We agree with that view. Accordingly, we hold that the trial court abused its discretion by failing to defend Diefenderfer's fifty-foot private road easement by entering a mandatory injunction requiring appellees to remove the subdivision wall from the whole of the fifty-foot easement area. We reverse the judgment appealed and remand for entry of an order consistent with this opinion.
REVERSED and REMANDED.
PETERSON, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting.
I respectfully dissent.
In my opinion something less than a mandatory injunction would suffice to recompense appellant for any loss he may have suffered. Money damages, for example. Appellant has not really lost much. He still has the ingress and egress to which he is entitled. He lost some easement land but no accessibility. Appellees were wrong in building the encroachment and should pay the penalty for such wrongdoing; but the extreme mandatory injunction is overkill. See Willis v. Hathaway, 95 Fla. 608, 117 So. 89 (1928). See also Johnson v. Killian, 157 Fla. 754, 27 So.2d 345 (1946); Waters v. School Bd. of Broward County, Florida, 401 So.2d 837 (Fla. 2d DCA 1981); Goldberger v. Regency Highland Cond. Ass'n, Inc., 383 So.2d 1173 (Fla. 4th DCA 1980); Do Couto v. ITT Comm. Dev. Corp., 347 So.2d 1059 (Fla. 1st DCA 1977), cert. den., 357 So.2d 186 (Fla. 1978).
NOTES
[1] J. Bruce & J. Ely, Law of Easements & Licenses In Land, para. 7.02[1][e] (1988); 1 R. Boyer, Florida Real Estate Transactions pp. 23-73 (1991).
[2] Robinson v. Feltus, 68 So.2d 815 (Fla. 1953); Dotson v. Wolfe, 391 So.2d 757 (Fla. 5th DCA 1980); 25 Am.Jur.2d Easements & Licenses § 78 (1966). Annotation, Right-of-Way Width, 28 A.L.R.2d 253, 265 (1953).
[3] J. Bruce & J. Ely, The Law of Easements & Licenses in Land, para 3.04 (1988); 2 G. Thompson, Commentaries on the Modern Law of Real Property § 426 (1980).
[4] J. Bruce & J. Ely, The Law of Easements & Licenses in Land, para 7.02(3) (1988); Richard Paul, Inc. v. Union Improvement Co., 91 A.2d 49 (Del. 1952); 28 Am.Jur.2d Easements § 578 (1966); 28 C.J.S. Easements § 77 (1941); Fairfield Properties, Inc. v. Pepe, 56 A.D.2d 883, 392 N.Y.S.2d 481 (1977); Hyland v. Fonda, 44 N.J. Super. 180, 129 A.2d 899 (1952).
[5] It found the wall "infringed" on the easement, but denied the injunction for other reasons discussed below.
[6] Richard Paul, Inc. v. Union Improvement Co., 91 A.2d 49 (Del. 1952).
[7] 3 R. Powell, The Laws of Real Property para. 420 (1945).
[8] See 3 R. Powell, The Law of Real Property, para. 420 (1988); Restatement (Second) of Torts § 941 pp. 580, 584 (1979).
[9] U.S. Const. Amend. V; Art. 10, § 6, Fla. Const.
[10] See also Langhorst v. Riethmiller, 52 Ohio App.2d 137, 368 N.E.2d 328 (1977).