646 So.2d 737 (1994)
EASTERN FEDERAL CORPORATION, Appellant,
v.
STATE OFFICE SUPPLY COMPANY, INC., Appellee.
No. 92-03782.
District Court of Appeal of Florida, First District.
June 14, 1994.
Rehearing Denied January 12, 1995.
*738 Sidney L. Matthew, of Gorman & Matthew, P.A., Tallahassee, for appellant.
Neil H. Butler, of Butler & Long, P.A., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final order granting appellee State Office Supply, Inc. a permanent mandatory injunction against appellant Eastern Federal Corporation, and rejecting appellant's claim for damages against appellee. Appellant raises issues relating to the scope of the injunction and the rejection of its claim for damages. We affirm, as modified, the entry of the permanent mandatory injunction.
The relevant facts are that appellant is the owner of the Miracle Plaza Shopping Center on Thomasville Road in Tallahassee. In 1968, appellant entered into a lease with the Grand Union Company, which operated a Colonial Grocery Store on the site. The lease provided for a base rent of $1.60 per square foot plus one percent of all gross yearly sales in excess of $2,352,000. The lease had a term of 15 years and was renewable for an additional 15 years, and was thereafter renewable in two-year increments. The lease also contained a provision stating that Colonial could transfer and assign the lease or sublet the premises with the permission of appellant, "which permission shall not be unreasonably withheld."
Colonial's sales never triggered the percentage rent clause. In 1973, Colonial subleased the premises to appellee. Appellee was in the business of selling retail office furniture and supplies. By 1979, appellee had achieved 1.6 million dollars in yearly sales and had thus not triggered the percentage rent clause. In 1981, appellee filed for bankruptcy protection in a chapter 11 proceeding and emerged under a plan of reorganization *739 in 1982. Pursuant to the plan of reorganization, appellee assumed the unexpired sublease between it and Colonial, and in 1987, the bankruptcy case was closed.
During the pendency of the bankruptcy proceeding, appellant challenged whether appellee had any rights under the sublease between it and Colonial, and also contended that any future sublease had to be to a grocery store because a grocery store was the only type of tenant which could trigger application of the percentage rent clause. The bankruptcy court rejected these contentions, essentially holding that by consenting to the sublease between Colonial and appellee, appellant gave up the right to have the property used as a grocery store. These orders were affirmed by the United States District Court of the Northern District of Florida and the Eleventh Circuit Court of Appeals.
In January 1986, appellee subleased the premises to Farmer's Furniture Company under an agreement with appellant under which appellant was to receive a percentage of the difference between the base rent and the market rental, as compensation for the loss of the percentage rent clause. Farmer's Furniture vacated two years later. Appellee thereafter proposed Scott Tennyson Guitar Services, Inc., as a proposed subtenant, but appellant refused on the ground that this tenant was incapable of triggering the percentage rent clause at some reasonable future point.
Appellee filed a complaint in the Leon County Circuit Court seeking damages and injunctive relief, preventing appellant from withholding consent to any future subtenant. During the pendency of this suit, appellee began negotiations with the State of Florida to sublease the premises to the Department of Insurance for a period of two years. Under an agreement ultimately reached, the Department would pay $200,000 for improvements and a rent of $14.50 per square foot. Appellant again withheld consent on the ground that the State was not in the business of retail sales and would thus not trigger the percentage rent clause. Appellee responded with a motion for emergency temporary relief.
The trial court entered a temporary injunction enjoining appellant from withholding its consent to the State of Florida subleasing the property, finding that unless injunctive relief was allowed, appellee would lose the value of the leasehold improvements, and would have to continue paying rent with little chance of renting the property to a tenant suitable to appellant. Appellant's refusal to consent to the proposed sublease was commercially unreasonable under the circumstances of the case. In granting the temporary injunction, however, the court held that damages are an appropriate remedy to compensate a landlord for breach of a percentage rent clause in a lease. The court reserved jurisdiction to assess the amount of any damages which may have been sustained by appellant. The court subsequently modified its order, requiring appellant to sign any applications for variance or rezoning which may be required for the proposed sublease. This order was affirmed by this court without opinion.
Appellant subsequently filed a motion to modify the temporary injunction, alleging that state office employees, who were then occupying the premises, were parking in all available parking spaces, creating parking problems for other tenants of the shopping plaza. Appellant further contended in the motion that it had attempted to negotiate reasonable parking arrangements with appellee, to no avail. Appellant requested that the temporary injunction be modified to require appellee and its sublessee the Department of Insurance to comply with certain parking restrictions. Appellee responded with a motion for attorney fees and costs under section 57.105, Florida Statutes.
The trial court, in a pretrial order, determined that the issues remaining for trial were (1) whether appellant was entitled to damages because appellee subleased the premises to a nonretail tenant; (2) whether appellee was entitled to a permanent injunction prohibiting appellant from continuing to engage in a pattern of unreasonable conduct and, if so, the scope of the injunction; (3) whether appellant was entitled to modification of the temporary injunction such that reasonable parking restrictions would be imposed *740 upon appellee and its subtenant; and (4) whether appellee was entitled to attorney fees and costs. During the two-day bench trial which followed, nine witnesses testified, and the testimony focused upon three broad areas, whether the shopping center could attract tenants that could trigger the percentage rent clause, whether appellant had sustained damages, and the effect of the state office employees' parking habits on the shopping plaza.
Appellant presented testimony that, after the State Department of Insurance moved into the shopping plaza, another tenant, a retail office supply business, experienced a drop in sales, because the office employees took all of the available spaces in front of the office supply store. This tenant ultimately moved out. Appellant also presented the testimony of a person who had in the past expressed interest in subleasing the shopping center space from appellee for the purpose of operating a gourmet grocery store. This person anticipated that his sales would trigger the percentage rent clause and attempted to negotiate with appellee for an increase in the percentage rent threshold. Appellee's refusal to negotiate as to this point "killed" this prospective subtenant's interest in subleasing the space.
Appellant presented expert testimony from a broker of commercial real estate who was experienced in negotiating commercial leases for shopping centers in the Tallahassee area. This broker testified that an "anchor" tenant is the key to a shopping center and necessary to attract business to other stores in the center. It is detrimental to have an office tenant rather than a retail tenant. The broker expressed familiarity with the demographics of the shopping center and expressed an opinion that, at the time of the sublease to the Department of Insurance, the center could have attracted a retail tenant capable of triggering the percentage rent clause.
Appellant's final witness, also an expert, was a professor of real estate from Florida State University. This witness opined that the loss of a retail anchor tenant detrimentally affects a shopping center in two ways. First, it results in loss of rent from the anchor store, and second, it renders the remaining store spaces less valuable. In the event that appellant was enjoined from withholding consent to office usage for a 20-year term, appellant's damages would be somewhere between $278,000 and $611,000. These calculations did not take into account losses resulting from the office tenant's failure to trigger the percentage rent clause nor the decrease in value of appellant's reversionary interest in the property.
Appellee presented the testimony of a real estate broker specializing in the leasing of shopping centers. This broker testified that the shopping center space was too large for most retail users and too small for a "super store" (grocery) retail user. There was no retail tenant available in February 1991 capable of triggering the percentage rent clause. This witness agreed with appellant's expert that an unanchored center cannot charge as much rent as an anchored center.
Appellee presented the testimony of appellant's president. This witness testified that he had rejected appellee's proposed tenants because they were "nontraditional uses for an anchor store." Appellant had not received percentage rents in the past from the shopping plaza. Appellant had compromised with appellee as to the sublease to the Farmer's Furniture Store, because appellant had needed to do so. The consent and percentage rent provisions of the original lease were designed to protect appellant from nontraditional uses of the space. Office usage had adversely affected the plaza, and one tenant had left because of the parking problems. Two other tenants had been slow paying the rent, presumably because the office tenant had adversely affected their business.
Finally, appellee's president testified that appellee had hired three real estate agents to find tenants for the space, but these agents had been unable to find tenants capable of triggering the percentage rent clause. The businessman who had considered opening a gourmet grocery store had never been a vigorous prospect. Appellee was currently negotiating with another agency of the state government for a lengthy sublease of the space.
*741 The trial court entered an order rejecting appellant's claim for damages in its entirety. The trial court found that appellant had not suffered any damages based upon appellee's failure to sublease the space to a percentage-paying tenant, because at the time of the earlier temporary injunction (requiring appellant to consent to the sublease to the Department of Insurance), "there was no market for attracting retail tenants to the SOS lease space who would have triggered the percentage rent clause in the primary lease." The trial court further found that appellee had made a reasonable effort to obtain a suitable retail tenant prior to proposing the nonretail tenant. Appellant had not sustained any cognizable damages due to the loss of a retail anchor tenant and due to office usage of the space, because such usage was reasonable.
The trial court found that appellant had engaged in a pattern and practice of unreasonably withholding consent to prospective subtenants proposed by appellee. Accordingly, appellant was enjoined to consent to any further "renewals, extensions or replacements" of the original sublease between appellee and the State of Florida and was to have no further right to consent to further subleases until the State of Florida vacates the premises. Appellant was thereafter to retain its right to consent to subtenants but was enjoined from objecting to proposed subtenants on various grounds, including financial stability and inability of the tenant to generate percentage rent payments unless appellant was able to substantiate the existence of a percentage-rent-paying subtenant within 30 days of receiving a request for approval of a prospective subtenant. Finally, the trial court found it had no authority to impose parking restrictions on a subtenant in the absence of an agreement between the parties, and denied appellee's claim for attorney fees.
As to the first issue, whether the trial court erred in rejecting appellant's claim for damages, we affirm. The trial court's decision to deny damages rested on the resolution of factual issues relating to the market for a potential percentage-paying retail subtenant in February 1991, whether appellee had made a reasonable effort to obtain a retail subtenant suitable to appellant, and whether in the absence of such a retail subtenant, office usage was reasonable in light of the rental history of the space. We decline to disturb the trial court's resolution of these factual issues.
As to the second issue, whether the permanent mandatory injunction which the trial court entered was within the parameters of its discretion, the granting or denial of an injunction is a matter that lies within the sound discretion of the trial court. Scarbrough v. Meeks, 582 So.2d 95 (Fla. 1st DCA 1991). A party seeking an injunction must demonstrate a clear legal right, the inadequacy of a remedy at law, and that an irreparable injury will occur if such relief is not granted. Leon County Classroom Teachers Association, FTP-NEA v. School Board of Leon County, 363 So.2d 353 (Fla. 1st DCA 1978). Mandatory injunctions, however, are particularly looked upon with disfavor and are granted sparingly and cautiously. Dudley v. Orange County, 137 So.2d 859 (Fla. 1962); First National Bank in St. Petersburg v. Ferris, 156 So.2d 421 (Fla. 2d DCA 1963). The terms of a permanent injunction must be confined to what is required by the circumstances justifying the injunction, and those terms are subject to alteration when those circumstances change. Hale v. Miracle Enterprises Corporation, 517 So.2d 102 (Fla. 3d DCA 1987).
We affirm the trial court's finding that appellee was entitled to a permanent injunction based upon appellant's pattern of unreasonably rejecting proposed subtenants. After careful consideration of the record and arguments of the parties, however, we are persuaded that the injunction entered herein exceeded the parameters of the trial court's discretion. Although the trial court was entitled to reject appellant's damage claim, the trial court was also required to consider the essentially uncontroverted evidence of the detrimental effect of office usage, in fashioning its injunction. See Liza Danielle, Inc. v. Jamko, Inc., 408 So.2d 735 (Fla. 3d DCA 1982) (parties should not be enjoined to perform an act when the harm resulting to the *742 party is wholly disproportionate to the benefit to the other party).
The evidence was undisputed that office usage is harmful to a retail shopping plaza, and we must conclude that it was error for the trial court to enjoin appellant to consent to all further renewals, extensions, or replacements of the original sublease between appellee and the State of Florida. Instead, after the expiration of the sublease to the State and the one-year extension permitted in that sublease, appellant should only be enjoined from objecting to further renewals, extensions, or replacements of the sublease unless appellant, within 30 days after receiving notice of such proposed action, can produce a retail tenant willing to enter into a sublease with appellee on terms as or more advantageous to appellee than proposed by the State. Likewise, appellant should not be enjoined from objecting to further subleases to the State of Florida for lack of reasonable parking restrictions in any proposed sublease. Although the trial court correctly determined that it had no authority to modify the present sublease between appellee and the State Department of Insurance, which had been entered into pursuant to the earlier temporary injunction, nothing prevented the trial court from allowing appellant to object to future subleases between appellee and the State for lack of reasonable parking restrictions in the proposed sublease.
In other respects, the injunction which the trial court fashioned was within the trial court's discretion. Accordingly, the order appealed from is affirmed, as modified herein.
MINER and WOLF, JJ., concur.