997 So.2d 463 (2008)
C.B., a juvenile, Petitioner,
v.
Dale DOBULER, etc., et al., Respondents.
No. 3D08-1454.
District Court of Appeal of Florida, Third District.
December 10, 2008.
Bennett H. Brummer, Public Defender, and Billie Jan Goldstein, Assistant Public Defender, for petitioner.
Bill McCollum, Attorney General, and Jerome Smiley, Assistant Attorney General, for respondents.
Before SHEPHERD, CORTIÑAS, and SALTER, JJ.
PER CURIAM.
We have before us the twelfth in a series of cases spanning three years (all but one in the last two years) in which the same trial judge has summarily ordered an uncooperative juvenile directly to secure detention contrary to law. See B.M. v. Dobuler, 979 So.2d 308 (Fla. 3d DCA 2008) (Green, Shepherd, Rothenberg); A.K. v. Dobuler, 951 So.2d 989 (Fla. 3d DCA 2007) (Ramirez, Lagoa, Schwartz); A.R. v. Dobuler, 960 So.2d 793 (Fla. 3d DCA 2007) (Gersten, Fletcher, Suarez); R.B. v. Dobuler, No. 3D07-211 (Fla. 3d DCA Jan. 26, 2007) (Wells, Cortias, Schwartz) (order); A.P. v. Dobuler, No. 3D06-2823 (Fla. 3d DCA Nov. 17, 2006) (Wells, Cortias, Rothenberg) (order); N.E. v. Dobuler, No. 3D06-2774, 940 So.2d 436 (Fla. 3d DCA Nov. 13, 2006) (Wells, Cortias, Rothenberg) (order); K.J. v. Dobuler, No. 3D06-2651, 939 So.2d 1073 (Fla. 3d DCA Oct. 27, 2006) (Wells, Cortias, Rothenberg) (order); D.S. v. Dobuler, No. 3D06-2618, 939 So.2d 1073 (Fla. 3d DCA Oct. 25, 2006) (Wells, Cortias, Rothenberg) (order); S.S. v. Dobuler, No. 3D06-2341, 942 So.2d 889 (Fla. 3d DCA Sept. 22, 2006) (Gersten, Green, Ramirez) (order); see also L.D. v. Dobuler, No. 3D06-288, 920 So.2d 8 (Fla. 3d DCA Feb. 16, 2006) (Gersten, Green, Suarez) (dismissing habeas petition as moot after petitioner was released by different juvenile court judge); C.B. v. Dobuler, No. 3D05-2596, 915 So.2d 1216 (Fla. 3d DCA Nov. 10, 2005) (Gersten, Green, Ramirez) (granting writ of habeas corpus where juvenile was held in detention for over fifteen *464 days while awaiting placement in moderate risk residential program). In each case, a panel of this Court ordered immediate release of the juvenile, frequently upon commendably swift confessions of error by the State.[1] The present case is legally indistinguishableand barely factually distinguishablefrom those that have preceded it.
On January 5, 2008, C.B., a minor, was arrested on charges of Disorderly Intoxication and Resisting an Officer Without Violenceboth misdemeanor chargesin Case No. J08-75. At his first appearance, C.B. was released to the custody of a guardian. A sounding was scheduled for February 11. C.B. did not appear and a pick-up order issued. Two days later, the pick-up order was quashed, and a final adjudicatory hearing was set on the charges for March 26. On this date, C.B. again failed to appear and a second pick-up order issued. That pick-up order was quashed later on the same day, and the final adjudicatory hearing was reset to May 7. On May 7, C.B. again failed to appear, and a third pick-up order was issued for his retrieval.
On June 2, C.B. was arrested on new charges of Loitering, Resisting an Officer Without Violence, and Possession of Marijuanaagain, all misdemeanor charges in Case No. J08-3775. The next day, he was brought before the courtboth for his first appearance on the new charges and for disposition of the May 7 pick-up order. With the new charges, C.B. scored four points on his Risk Assessment Instrument.[2] The court set a sounding for the new case for June 10, the same date as had been lately established for the trial of C.B.'s first case. Then, with the State standing mute, the judge sua sponte ordered C.B. from his courtroom directly to secure detention for failing to appear for trial in Case No. J08-75. "Fifteen days I can hold him on the second time he fails to show up for his trial.... That's the law," said the court. In so ruling, the judge expressly refused to take into account the fact that the Risk Assessment Instrument did not authorize placement of C.B. in secure detentiona principle of law reiterated to him by this Court in an opinion issued a mere ninety days earlier. See B.M., 979 So.2d at 310 ("Absent a statutory exception, see § 985.255(2), Fla. Stat. (2007), an order placing a child in detention must be ... supported by a proper `risk assessment of the child.'"). The written detention order signed by the judge on the hearing date actually ordered C.B. to eighteen days of secure detention. On these facts, informed by the many recent cases in which the judge had erroneously ordered juveniles from his courtroom to secure detention in factually and legally indistinguishable circumstances, we ordered C.B.'s immediate release on the evening of June 5, 2008, a matter of hours after receipt by us of C.B.'s habeas petition.[3]
The next morning, June 6, 2008, the judgeagain acting sua sponteplaced C.B.'s case back on the calendar for that *465 afternoon, and informed the parties that "[t]he Court will be issuing a rule to show cause in th[e] case." When informed in the afternoon that we already had granted C.B.'s petition for immediate release, the judge perplexingly replied:
Well, I'm glad the Third DCA acted so quickly, because I was going to release him today after I served him with a rule to show cause as to why he should not be held in contempt of court for missing three court hearings on his original case. I'm serving you all with a copy of that rule to show cause, which is now set for June 10th at 1:30, in open court. You are to notify your client accordingly.
(emphasis added). Then, he continued:
And, quite frankly, I'm well within the 72 hours that the statute allows me to hold him, by the way. So I think perhaps the Third DCA's ruling is a bit premature, since he was just picked up on the 3rd of June and today is only the 6th, Counsel.
(emphasis added).
Of course, the plain language of the statute to which the court was alluding, section 985.255(1)(i), Florida Statutes (2008), limits this seventy-two hour hold power to "72 hours in advance of the next scheduled court hearing."[4] A precondition of its deployment is the existence of a scheduled hearing within seventy-two hours of the secure detention order authorized by the statute. A.K., 951 So.2d at 991 (ordering immediate release of juvenile detained by this trial judge for failure to appear when A.K. would have been in secure detention for twenty-one days after he was taken into custody). In this case, C.B. was summarily ordered from the judge's courtroom on June 3, 2008. The "next scheduled court hearing" in C.B.'s case was set for June 10, 2008. The judge had no authority to hold C.B. under section 985.255(1)(i). See A.K., 951 So.2d at 991. Moreover, he made no finding that C.B. acted "willfully" as required by the statute. See M.P. v. Gardner, 838 So.2d 711, 713 (Fla. 4th DCA 2003). It is clear to us from the transcript of the June 6 hearing that the judge's invocation of section 985.255(1)(i) of the Florida Statutes at that time was nothing more than an effort at post-hoc justification of his June 3 order. See also B.M., 979 So.2d at 314. (similarly finding same trial judge's effort to label B.M. an "absconder" to justify detaining her for eighteen days to be an unfounded "post-hoc justification").
In B.M., we painstakingly elucidated the statutory parameters which bind the judges of the juvenile courts of this state in the detention of juveniles. As in R.G. v. State, 817 So.2d 1019, 1020 (Fla. 3d DCA 2002), we were of the hope "that the message to this trial judge should be clear...." B.M., 979 So.2d at 310. We also recognized that the trial judge, the same one as here, may have been acting from the best of motives in repeatedly ignoring the same legislative guidance. Nevertheless, as our colleague in the First District Court of Appeal, Judge Philip Padovano recently wrote when faced with the nearly identical circumstances in K.E. v. *466 Department of Juvenile Justice, 963 So.2d 864, 868 (Fla. 1st DCA 2007):
It is not for us, as judges, to question the wisdom of the legislation. Rather, our task is simply to carry it out. Section 985.255 establishes the criteria for detaining a child, pending the outcome of a juvenile delinquency case. A decision to detain a child must be made according to the statutory criteria.
Stated otherwise, no person, not even a judge, is above the law. If a trial judge is not satisfied with that law, he is free to make that fact known to his legislators, as is any other citizen. Meanwhile, we reiterate to the trial judge in this case, in the same words we iterated to him a few short months ago, "just as the trial judge in this case had the right to expect that [C.B. would] would respect his orders,' ... we, as a court created by the constitution for the purpose of supervising the lower court, are entitled to the same obedience.'" B.M., 979 So.2d at 318 (quoting State ex rel. Schwartz v. Lantz, 440 So.2d 446, 450 (Fla. 3d DCA 1983)). We will not permit the children of this state to be played as a game of ping-pong between courts.
Petition granted.
NOTES
[1] See R.B., No. 3D07-211; N.E., No. 3D06-2774; K.J., No. 3D06-2651; D.S., 3D06-2618; S.S., No. 3D06-2341; L.D., No. 3D06-288; C.B., No. 3D05-2596.
[2] A Risk Assessment Instrument is a standardized document developed cooperatively by interested state agencies and utilized statewide in determinations regarding placement of a child in detention care. § 985.245(1), 2(a), Fla. Stat. (2008). The Risk Assessment Instrument in this case was properly scored based upon both C.B.'s first and second offense. § 985.245(4), Fla. Stat. (2008). A score of four points on a risk assessment instrument does not justify placement in secure detention. See B.M., 979 So.2d at 312 n. 2.
[3] Because time was of the essence in releasing C.B. from custody, we advised that an opinion explaining our reasoning would follow.
[4] Section 985.255(1)(i) reads:

(1) [A] child taken into custody and placed into nonsecure or home detention care or detained in secure detention care prior to a detention hearing may continue to be detained by the court if:
....
(i) The child is detained on a judicial order for failure to appear and has previously willfully failed to appear, after proper notice, for an adjudicatory hearing on the same case regardless of the results of the risk assessment instrument. A child may be held in secure detention for up to 72 hours in advance of the next scheduled court hearing pursuant to this paragraph....
(emphasis added).