# Third District Court of Appeal

## State of Florida

Opinion filed November 5, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 13-1509
Lower Tribunal No. 03-10876
_____


**Bull Motors, LLC., etc.,**
Appellant,

vs.

**Mary K. Brown,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Ronald Dresnick, Judge.

Kirschbaum, Birnbaum, Lippman & Gregoire, and Nancy W. Gregoire, (Ft. Lauderdale); Richard A. Ivers, (Coral Springs), for appellant.

James M. Loren (Plantation); Sina Negahbani, for appellee.

Before WELLS, EMAS and LOGUE, JJ.

WELLS, Judge.

Bull Motors, L.L.C., d/b/a Maroone Ford of Miami appeals from a

permanent injunction mandating the inclusion of specific language in both its

conditional financing transaction agreements involving a spot delivery, and in its notifications to purchasers whose initial financing applications have been rejected. We reverse the final injunctive order for two reasons, first because it was entered without affording Bull Motors the opportunity to be heard at an evidentiary hearing on the matter, and second because the order is overly broad and exceeds the relief requested.

This action was filed in 2003 when Mary Brown realized that she had not received the Credit Life and Disability insurance coverage that she allegedly was promised and applied for at the time she applied for financing for the purchase of a new Ford Escort. Although Brown was not charged a premium for the applied-for insurance, she claimed that she would not have gone through with the purchase of the car without the insurance and sought damages for fraudulent inducement. She also sought declaratory and injunctive relief under section 501.211 of the Florida Statutes, Florida's Deceptive and Unfair Trade Practices Act (FDUTPA).[1]

In a bifurcated proceeding, a jury awarded Brown $700 for the damage she incurred when she had to pay two installment payments on her car while she was disabled following two surgeries; $1,528.21 for FDUTPA violations; and $50,000 in punitive damages. These awards subsequently were nullified when the court

---

[1] In her third amended complaint, Brown also sought redress for purported violations of the Truth in Lending Act (TILA) 15 U.S.C. section 1601 et seq. and Florida's Motor Vehicle Retail Sales Finance Act, section 520.01 et seq. Both of these claims were dismissed before trial.

below granted Bull Motors' motion for judgment in accordance with its motion for directed verdict.

The court below subsequently granted declaratory and injunctive relief pursuant to section 501.211(1) of the Florida Statutes, finding that when Bull Motors signed Brown's name to new financing applications with no request for disability insurance coverage after she had been rejected for financing and disability insurance, it had engaged in "unfair, deceptive, unconscionable and injurious [conduct]" as proscribed by that provision.

The parties then were directed to confer with each other to agree to an appropriate consent injunctive decree and advised that should they fail to agree, the court would hold a hearing to determine the appropriate injunctive relief. After two non-evidentiary hearings to determine the scope of the injunctive relief to be imposed, on May 28, 2013, Brown's counsel sent a proposed final judgment to the trial court. The proposed order required Bull Motors to include specific language in all of its spot delivery contracts and to provide a proposed notification to every customer whose initial financing application had been disapproved. The letter transmitting this proposed order was mailed by regular post to counsel for Bull Motors. Two days later, on May 30, 2013, before Bull Motors had an opportunity to request a hearing, the order was signed by the court below.

That order states in pertinent part:

3

ORDERED AND ADJUDGED

A permanent Injunction is hereby entered against the Defendant (which includes it agents/representatives) as follows:

Pursuant to Fla. Stat. § 501.211(1) and in light of the factual record, this Court had previously decreed Defendant's conduct to be fraudulent, unfair, deceptive and unconscionable and thus a clear violation of FDUTPA. In order to protect the consuming public and prevent future misconduct by the Defendant as to the type suffered by the aggrieved consumer in this case (i.e., one relating to the forging of the consumer's signatures on financial documents and/or retail sales installment contracts (RISC), on all future vehicle sales transactions involving financing where conditional credit approval is sought and/or where vehicle spot delivery occurs and/or where the customer ("consumer") subsequent to contracting is to be re-contracted because [of] failed financing on the original terms, the Court hereby issues this injunctive order and decrees that the Defendant (which includes its agent/representatives) must strictly adhere to the following directives and procedures:

1. On all conditional financing transactions involving spot delivery, Defendant shall modify its spot delivery form or create a standard form that reads at the top of the document (in 20 bold font) as follows:

**YOU HAVE *CONDITIONALLY* BEEN APPROVED FOR FINANCING. THE FINANCING IS *NOT* FINAL AND YOU MAY HAVE TO BRING THE VEHICLE BACK TO US IF FINANCING IS DISAPPROVED. IF THE CONDITIONAL APPROVAL IS REJECTED, YOU HAVE THE RIGHT TO CANCEL THE TRANSACTON AND RECEIVE A REFUND; IF YOU DECIDE TO NEVERTHELESS PROCEED WITH THE SALES TRANSACTION, YOU HAVE THE**

# RIGHT TO REVIEW AND SIGN A NEW FINANCING APPLICATION – WHICH YOU ONLY NEED TO SIGN IF ITS [SIC] *FULLY* COMPLETED.

**_____ (Initial)**

**_____ (Date)**

2.    All financing transactions requiring re-contracting shall require Defendant to provide the customer with a notice (sent via certified mail return receipt request) containing the following:

**Dear Customer:**

**Your financing agreement signed on _____, was disapproved.  We are enclosing a copy of this agreement for your review.**

**Date of rejection _____**

**Reason for disapproval _____**

**Additional or differing terms or requirements necessary to qualify for financing, are as follows:_____.**

**We have made alternate financing arrangements with _____ (a finance company/lending institution) and are enclosing herein for your review a new proposed financing agreement.  Please contact us to discuss your financing options.**

**Signature of Manager /s/ _____**

3.  Defendant is strictly prohibited from having consumers sign RISCs in blank or only partially filled-out.

4.  Defendant is required to maintain originals of all financial documents signed by the consumer.   If the original cannot be maintained because the financing institution/bank requires the original documents, the Defendant is required to maintain legible copies of same.

Defendant's failure to adhere with the terms of this decree and upon adjudication of any violation of same, may result in the entry of

5

a contempt order upon which further orders may be entered including but not limited to the imposition of monetary sanctions.

The Court reserves jurisdiction to enforce the Court's decree, and provide and enter such other orders as necessary or appropriate, including those to enforce compliance.

Bull Motors challenges the validity of this mandatory injunction on a number of grounds. However, we find only two have merit: first, we agree that the injunction was improperly entered without conducting an evidentiary hearing, and second we agree that the injunction is invalid because it is overly broad and falls far outside the scope of relief sought below.

While "[t]he grant or denial of an injunction is a matter that lies within the sound discretion of the trial court," injunctions which compel or mandate affirmative action by a party are disfavored:

> The grant or denial of an injunction is a matter that lies within the sound discretion of the trial court. <u>E. Fed. Corp. v. State Office Supply Co.</u>, 646 So. 2d 737, 741 (Fla. 1st DCA 1994). "Injunctions are classified as prohibitory or mandatory in their effect and as temporary or permanent in their duration." <u>See</u> Henry P. Trawick, Jr., Trawick's Florida Practice & Procedure § 28.1 (2010 ed.). ***Mandatory injunctions, which compel an affirmative action by the party enjoined, are looked upon with disfavor, and the courts are even more reluctant to issue them than prohibitory ones. <u>See Johnson v. Killian</u>, 157 Fla. 754, 27 So. 2d 345, 346 (1946). "Issuance of mandatory injunctions before final hearing is disfavored and should be granted only in 'rare cases where the right is clear and free from reasonable doubt.' "*** <u>Spradley v. Old Harmony Baptist Church</u>, 721 So. 2d 735, 737 (Fla. 1st DCA 1998) (quoting <u>Am. Fire & Cas. Co. v. Rader</u>, 160 Fla. 700, 36 So. 2d 270, 271 (1948)).

Grant v. GHG014, LLC, 65 So. 3d 1066, 1067 (Fla. 4th DCA 2010) (emphasis added).

Here, no evidentiary hearing was held to allow Bull Motors to present evidence and to voice its opposition to the permanent mandatory injunctive relief proposed. Instead, the trial court adopted the plaintiff's proposed order and signed it before Bull Motors was given time to request a hearing or file a written response, let alone advance its position at an evidentiary hearing. "Procedural due process requires that each litigant be given proper notice and a full and fair opportunity to be heard." Carmona v. Wal-Mart Stores, East, LP, 81 So. 3d 461, 463 (Fla. 2d DCA 2011). On that basis alone, the order must be reversed. See Waste Mgmt., Inc. of Fla. v. Dunn, 873 So. 2d 623, 623-24 (Fla. 3d DCA 2004) (vacating an order granting injunctive relief because the trial court did not conduct an evidentiary hearing); Lopez v. Paredes, 653 So. 2d 472, 473-74 (Fla. 2d DCA 1995) (holding that the trial court's order was injunctive in nature, and as such required an evidentiary hearing on the entitlement to relief); see also Miami Bridge Co. v. Miami Beach Ry.Co., 12 So. 2d 438, 443 (Fla. 1943) ("It is settled by an overwhelming weight of authority that, except in rare cases, where the right is clear and free from reasonable doubt, a mandatory injunction, commanding the defendant to do some positive act, will not be ordered except upon final hearing, and then only to execute the judgment or decree of the court." (quoting Fla. E.

7

Coast Ry. Co. v. Taylor, 47 So. 345, 345-46 (Fla. 1908))). For this reason alone, the injunction entered below must be reversed.

Moreover, the injunction mandating Bull Motors' future behavior and specifying the precise language the company must use with all future customers, is overly broad.

> An injunction should never be broader than is necessary to secure to the injured party relief warranted by the circumstances involved in the particular case. E.g., DeRitis v. AHZ Corp., 444 So. 2d 93, 94 (Fla. 4th DCA 1984) (quoting Fla. Peach Orchards, Inc. v. State, 190 So. 2d 796, 798 (Fla. 1st DCA 1966)). Entry of an overly broad injunction can constitute a violation of the First Amendment. See, e.g., Animal Rights Found. of Fla., Inc. v. Siegel, 867 So. 2d 451, 456 (Fla. 5th DCA 2004); Adoption Hot Line, Inc. v. State, 402 So. 2d 1307, 1308–09 (Fla. 3d DCA 1981).

Chevaldina v. R.K./FL Mgmt., Inc., 133 So. 3d 1086, 1091 (Fla. 3d DCA 2014). Here, the trial court could have prohibited the conduct identified as violative of FDUTPA, without in effect dictating how this defendant should conduct its business and communicate in the future with all of its customers. Id. (vacating injunction and observing that injunction issued "improperly burdens [defendant's] speech more than necessary").[2]

---

[2] In fact the very language of section 501.211 suggests *enjoining* the violating behavior, rather than *mandating* behavior:

> (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Finally, the order grants relief not pled. See Sunbeam Television Corp. v. Mitzel, 83 So. 3d 865, 875 (Fla. 3d DCA 2012) ("[L]itigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared." (quoting Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So. 2d 561, 563 (Fla. 1988))); see also Cioffe v. Morris, 676 F.2d 539, 543 n. 8 (11th Cir. 1982) (confirming that unplead issues tried without consent deny due process). Brown never alleged that the solution to the identified misconduct—the forgery of her signature—was for Bull Motors to provide all future customers with specific forms regarding financing approval. That solution was only suggested by counsel at the first non-evidentiary hearing. Brown certainly never pled entitlement to a permanent mandatory injunction which would specify the exact language Bull Motors would be required to use in all future sales contracts.

In fact, Bull Motors' counsel explained to the court at one of the non-evidentiary hearings that since 2011 it consistently had been presenting its customers (a) with a Spot Delivery Agreement which notified customers that their attempted purchases were subject to third party financing and that the vehicle being purchased had to be returned if the purchaser was not successful in obtaining third party financing; and, (b) where financing failed, with a Cancellation Notice § 501.211, Fla. Stat. (2013).

advising customers that their application for financing had been denied and that they had the option of cancelling the transaction or entering into a new financing contract. While the trial court summarily dismissed these Spot Delivery Agreements and Cancellation Notices as suitable only for a "gnat" (referring to the size of the print), as Bull Motors argues "the two forms . . . exceed all requirements of Florida and federal law"[3] and contain all the disclosures delineated in the ex parte permanent injunction imposed on Bull Motors by the trial court.[4]

We therefore reverse and remand with directions to vacate the permanent injunction and for an evidentiary hearing before any permanent injunctive relief is ordered.

---

[3] See generally C.B. v. Dobuler, 997 So. 2d 463, 466 (Fla. 3d DCA 2008) ("It is not for us, as judges, to question the wisdom of the legislation." (quoting K.E. v. Dep't of Juvenile Justice, 963 So. 2d 864, 868 (Fla. 1st DCA 2007)).

[4] By failing to hold an evidentiary hearing before issuing the injunctive relief as written, Bull Motors was not given the opportunity to provide evidentiary support for its position that the existing forms better addressed industry standards, and that the proposed language provided by opposing counsel and adopted by the court would result in redundancy, inconsistency, and increased customer confusion.