# Third District Court of Appeal

## State of Florida

Opinion filed May 29, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2366
Lower Tribunal No. 20-26117
_____

**Celcor Trust LLC**,
Appellant,

vs.

**Shoma Homes at Keys Cove Condominium Association, Inc.,
et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Twig, Trade, & Tribunal, PLLC, and Morgan L. Weinstein (Fort Lauderdale), for appellant.

Conroy Simberg, and Diane H. Tutt (Hollywood), for appellee Shoma Homes at Keys Cove Condominium Association, Inc.

Before LINDSEY, GORDO and BOKOR, JJ.

BOKOR, J.

Celcor Trust, LLC, the owner of a condominium unit at 2637 SE 16th Terrace in Miami, appeals the trial court's denial of its motion for a mandatory injunction to compel the Shoma Homes at Keys Cove Condominium Association (the Association) to repair and maintain ongoing water, mold, and termite damage to the drywall and flooring of the unit. The trial court concluded after an evidentiary hearing that an injunction was inappropriate because Celcor failed to show that repairs would be effective at preventing the damages, particularly the ongoing water issues which would involve a nonparty upstairs unit owner and more substantial root cause analysis. In other words, it isn't a simple patch. And as far as the termite issue, the trial court found that there is no active termite infestation, and that any holes caused by the termites or the Association's investigation into the water or termite issues can be patched, and damages sought. Because we are constrained to review the court's factual findings under an abuse of discretion standard, we affirm.[1]

---

[1] Celcor also argues that the trial court reversibly erred by permitting one of the Association's witnesses to testify as an expert without proper notice. Because we determine no prejudice from the offending testimony of the improperly disclosed witness and recognize the trial court's broad discretion in this area, we decline to address the issue further. See Binger v. King Pest Control, 401 So. 2d 1310, 1312 (Fla. 1981) (explaining that "ultimate control over witness disclosure problems" is left "to the broad discretion of the trial judge and focuses on prejudice in the preparation and trial of a lawsuit"); White v. Ring Power Corp., 261 So. 3d 689, 698–99 (Fla. 3d DCA 2018)

## BACKGROUND

Celcor's complaint alleges that in June 2019, its representative, Ricardo Corona, discovered termite damages and dead termites in the walls and baseboards of the unit, as well as a square hole in the wall. Corona also observed water damage and black mold growth in a master bedroom and closet. After Celcor notified the Association and requested repairs, the Association acknowledged that it had made the hole to repair a water line, but the Association did not close the hole or take any further action to repair or prevent the other damages. The parties agree that the drywall is a common element which the Association is responsible for maintaining pursuant to the declaration of condominium and Chapter 718, Florida Statutes.[2]

---

("[W]hile a trial court has the authority to exclude the testimony of an undisclosed witness, the decision to do so turns in large measure on demonstrated prejudice to the opposing party, as well as the ability to avoid any resulting prejudice and considerations relating to the orderly administration of justice.") (quoting Deutsche Bank Nat'l Tr. Co. ex rel. LSF MRA Pass-Through Tr. v. Perez, 180 So. 3d 1186, 1189 (Fla. 3d DCA 2015)).

[2] See § 718.113(1), Fla. Stat. ("Maintenance of the common elements is the responsibility of the association, except for any maintenance responsibility for limited common elements assigned to the unit owner by the declaration. The association shall provide for the maintenance, repair, and replacement of the condominium property for which it bears responsibility pursuant to the declaration of condominium.").

3

Celcor subsequently retained several experts to examine the property and determine the source of the damages. As to the water and mold damage, Celcor proffered the testimony of a structural engineer, Alfredo Brizuela. Brizuela testified that the water and mold damages were being caused by condensation "sweating" from an air conditioning pipe in the interstitial space between the interior drywall and the concrete deck between the first and second floors of the condominium. He also testified that the condensation could be prevented by adding additional insulation around the pipe, but that repairs to the drywall alone would not prevent the problem from reoccurring without the addition of the insulation. But Brizuela also testified, as noted by the trial court, that:

> The root cause of this problem according to Plaintiff's expert continues to be the drip caused by the inappropriate size of the sleeve. Although it seems apparent that the sleeve inserted, I will call it the sleeve, met code or at least there was testimony that it was compliant with the code at the time of the alleged defective installation, if that leak is not cured, more insulation will not solve the problem; it will only delay the outcome of the problem. The leak seems to be the problem.

Because the mandatory injunction would not address this root cause, the trial court declined to order the repairs requested by Celcor.

As to the termite damage, Celcor also retained an entomologist, Kenneth Glover, who testified that the termites that damaged the drywall entered from the subterranean soil outside the building and that the unit

4

would be at continued risk of termite intrusion unless the existing damages were repaired and potential entry points on the exterior were properly treated. Although Celcor proffered video evidence of live termites in the unit as of November 2020, Glover did not observe live termites in the unit during his inspection. The Association also conducted regular pest control treatments of the exterior throughout this period, including in December 2020.

The trial court therefore concluded an injunction would not be necessary to maintain the status quo because Celcor did not establish that the unit was presently experiencing termite intrusion or that the current termite treatments were ineffective. The court also found the mandatory injunction vis-à-vis the water intrusion failed to address the root cause, to be determined at trial, and that Celcor possessed an adequate remedy at law. This appeal followed.

## ANALYSIS

"[A] mandatory injunction is proper where a clear legal right has been violated, irreparable harm has been threatened, and there is a lack of an adequate remedy at law." Legakis v. Loumpos, 40 So. 3d 901, 903 (Fla. 2d DCA 2010). A trial court has wide discretion when granting, denying, or modifying an injunction, though its factual determinations must be supported

5

by competent, substantial evidence. See GFA Int'l, Inc. v. Trillas, 327 So. 3d 872, 875 (Fla. 3d DCA 2021). This court has also recognized that mandatory injunctions (i.e., those that "compel or mandate affirmative action by a party") are generally disfavored and should be granted only in situations where the right at issue is clear and free from reasonable doubt. Bull Motors, LLC v. Brown, 152 So. 3d 32, 35 (Fla. 3d DCA 2014).

Based on the relevant standard of review, we can't say that the trial court abused its discretion or failed to ground its decision on competent substantial evidence. This is especially true in the context of a generally disfavored mandatory injunction. The trial court's determinations that there was no lack of an adequate remedy at law (i.e., damages), that there was no live termite intrusion warranting mandatory injunctive relief, and that any mandatory injunction directed at the water intrusion would be premature absent a determination of the root cause of the problem, were reasonable conclusions based on the evidence presented. The trial court was therefore within its discretion to deny the requested relief.

Affirmed.